## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RICHARD LEROY BILTON,

     Plaintiff,

v.                                                                    Civ. No. 16-109 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

     Defendant.

## <u>ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND</u>

THIS MATTER is before the Court on Plaintiff Richard Leroy Bilton's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" ("Motion") [ECF No. 20]. Having meticulously reviewed the entire record, considered the parties' arguments, and being otherwise fully advised, the Court concludes that the Administrative Law Judge did not weigh medical evidence in accordance with the law. Therefore, and for the further reasons detailed below, the Court will **GRANT** Plaintiff's Motion.

## I.   PROCEDURAL BACKGROUND

On June 4, 2010, Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income, alleging that his disability began on December 1, 1998. Administrative R. ("AR") 150-66. Plaintiff later changed his alleged onset date to May 21, 2010. AR 819. Plaintiff's applications were initially denied on September 15, 2010 [AR 88-95], and upon reconsideration on January 13, 2011. AR 101-104. Plaintiff then filed a written request for a hearing and on August 24, 2011, Administrative Law Judge ("ALJ") Augustus Martin held a hearing in North Charleston, South Carolina. Plaintiff testified at the hearing and was represented by attorney Jeff Yungman. The ALJ also heard testimony from Arthur Schmitt,

an impartial vocational expert ("VE"). AR 43-76.

On September 21, 2011, the ALJ issued his decision, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act ("the Act") since the date his application was filed. AR 25-37. Plaintiff requested the ALJ's decision be reviewed by the Appeals Council, and, on December 31, 2012, the Appeals Council denied his request for review. AR 1-7. Consequently, the ALJ's decision became the final decision of the Commissioner.

Plaintiff timely appealed the Commissioner's denial of benefits in the United States District Court for the District of New Mexico on March 1, 2013. *Bilton v. Social Security Administration*, No. 1:13-cv-201-LAM (D.N.M. May 9, 2014). The Court remanded the case with instructions that the Appeals Council consider additional medical evidence that was considered new, material, and related to the time period on or before the ALJ's decision. *See* AR 704-20. Upon remand, Plaintiff then received another hearing (*see* AR 751-53) held on July 15, 2015 by ALJ Ann Farris in Albuquerque, New Mexico. Plaintiff testified at the hearing and was represented by attorney Michael Armstrong. The ALJ also heard testimony from VE Thomas Greiner. AR 614-53.

On October 16, 2015, ALJ Farris issued her decision, concluding that Plaintiff was not disabled prior to November 4, 2014, but became disabled on that date and his disability continued through the date of her decision. She further concluded that Plaintiff had not been under a disability within the meaning of the Act at any time through March 31, 2011. AR 585-604. Plaintiff did not request review from the Appeals Council, and consequently, the ALJ's decision became the final decision of the Commissioner. Plaintiff timely appealed the Commissioner's decision to this Court on February 12, 2016. Pl.'s Compl., ECF No. 1.

2

## II.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).  "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the

claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    SUMMARY OF ARGUMENTS

Plaintiff challenges only those parts of the ALJ's decision that relate to the time period between May 2010 and November 2014. Pl.'s Mot. 5. He argues that the ALJ committed reversible legal error for three reasons: (i) the ALJ improperly evaluated medical opinion evidence, including the opinions of treating physicians; (ii) the ALJ impermissibly "picked and chose" evidence from the medical record to arrive at a finding of non-disability; and (iii) the ALJ's step five finding is legally deficient and not supported by substantial evidence. Pl.'s Mot. 1-2. The Commissioner responds by contending that the ALJ did not err when she evaluated medical opinion evidence, and that the ALJ made proper findings at step five. Def.'s Resp. 6-13, ECF No. 30. Because the case must be remanded for closer review and more adequate explanation of the pertinent medical evidence, the Court will not address Plaintiff's second and

third arguments.

## IV.    ALJ'S DECISION

On October 16, 2015, ALJ Farris issued a decision denying Plaintiff's application for benefits through March 31, 2011, the date he was last insured.  The ALJ did, however, determine that Plaintiff became disabled on November 4, 2014, and continued to be disabled through the date of her decision.  AR 603.  In doing so, the ALJ conducted the five-step sequential evaluation process.  AR 585-604.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 21, 2010, the date of his alleged disability onset.  At step two, the ALJ determined Plaintiff had the following severe impairments: depression, post-traumatic stress disorder ("PTSD"), pseudo seizures, and degenerative disc disease of the cervical and lumbar spine.  The ALJ found these impairments to be severe because they "combined to restrict the [Plaintiff's] physical and mental abilities, and have lasted for more than 12 months."[2]  AR 588.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  To reach this conclusion, the ALJ evaluated Plaintiff's impairments under Listings 1.04, 12.04, 12.06, and 12.07.  The ALJ first evaluated Plaintiff's degenerative disc disease of the cervical and lumbar spine under Listing 1.04 (disorders of the spine) and found that "neither medical imaging nor clinical examination findings indicated nerve root or spinal cord compromise" and therefore, found that Plaintiff did

---

[2] The ALJ determined that Plaintiff had cataracts, but that they were not severe.  Additionally, the ALJ determined that Plaintiff suffered from asthma, but found that it was not considered a medically determinable impairment.  Administrative R. ("AR") 589-90.  Plaintiff does not appeal those decisions here.

[3] The specific sections of the Code of Federal Regulations the ALJ referenced include: 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 (2017).  AR 589.

not meet the Listing.[4]  AR 589.

Moving to Plaintiff's mental impairments, the ALJ found that Plaintiff did not meet the requirements for Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), or Listing 12.07 (somatic symptom and related disorders). The ALJ determined that Plaintiff's mental impairments resulted in the following limitations: "no restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one to two episodes of decompensation, each of extended duration."  AR 589.  Because Plaintiff's mental impairments had not caused at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the ALJ found that the paragraph B criteria were not met.[5]  AR 590.  The ALJ also evaluated whether the evidence of

---

[4] Listing 1.04 provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[5] Paragraph B in Listing 12.04 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations listed below must be the result of the mental disorder

Plaintiff's mental impairments satisfied the criteria for paragraph C of Listings 12.04 or 12.06.[6]

---

described in the diagnostic description. Paragraph B requires that a severe mental impairment must result in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2.

Paragraph B in Listing 12.06 also describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations listed below must be the result of the mental disorder described in the diagnostic description. Paragraph B requires that a severe mental impairment must result in:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

*Id.*

[6] Paragraph C in Listing 12.04 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations listed below must be the result of the mental disorder described in the diagnostic description. Paragraph C requires:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

Paragraph C in Listing 12.06 also describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations listed below must be the result of the mental disorder described in the diagnostic description. Paragraph C requires:

Your mental disorder in this listing category is "serious and persistent," that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

After reviewing the evidence, however, the ALJ determined that the paragraph C criteria were also not met.  AR 590-91.

Before step four, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC") since May 21, 2010:

> [T]o perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), and can occasionally climb, balance, stoop, or crouch, but can never kneel or crawl.  He can frequently but not constantly handle and finger.  He must avoid exposure to hazardous conditions including unprotected heights and dangerous moving machinery.  He is limited to simple work-related decisions with few workplace changes.  He should have no interaction with the general public.  He is limited to occasional, superficial interaction with co-workers.

AR 591.  In support of this RFC assessment, the ALJ found that "[Plaintiff's] medically determinable impairments might be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible during the entire period at issue . . . ."  AR 592.  To reach this determination, the ALJ considered Plaintiff's testimony, medical opinion evidence from fourteen different medical providers, an opinion from Plaintiff's friend, and the record as a whole.  *See* AR 591-601.

Plaintiff previously worked as a welder and a house repairer.  At step four, the ALJ determined that since May 21, 2010, Plaintiff was not capable of performing this past relevant work, given his RFC.  AR 601-02.  At the fifth and final step, the ALJ noted that prior to the established disability onset date, Plaintiff was a younger individual pursuant to 20 C.F.R. § 404.1563.  However, on November 4, 2014, his age category changed to an individual closely approaching advanced age pursuant to 20 C.F.R. § 416.963.  The ALJ further noted that Plaintiff has at least a high school education and is able to communicate in English.  The ALJ added that

---

*Id.*

"transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills."  AR 602.

After determining that Plaintiff could not return to his past work, the ALJ asked the VE to consider whether there were jobs that existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity.  AR 602-03.  The VE identified three jobs that such an individual would be capable of performing, including: clearance cutter (DOT[7] 615.685-014), cuff folder (DOT 685.687-014), and motor polarizer (DOT 715.687-090).  Subsequently, the ALJ concluded that prior to the established onset date of disability, November 4, 2014, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  AR 603.  Therefore, the ALJ found that Plaintiff was not disabled under the meaning of the Act from May 21, 2010 through November 4, 2014.  AR 604.

## V.    ANALYSIS

Plaintiff challenges the ALJ's finding of nondisability by questioning the ALJ's method of evaluating medical opinion evidence, including evidence from treating physicians.  Pl.'s Mot. 12-18.  Generally, Plaintiff argues that the ALJ "collapsed" the two-step inquiry for treating physicians into a single step.  *Id.* at 14.  Furthermore, Plaintiff specifically challenges the ALJ's treatment of: (i) Dr. Stephen Rawe, neurosurgeon, (ii) Dr. Mark Evanko, doctor of osteopathic medicine, and (iii) Dr. Stephen Cheshire, psychologist.  *Id.* at 12-18.  The Court will discuss each of these opinions in turn.

---

[7] DOT stands for "Dictionary of Occupational Titles."

### a.  The Treating Physician Rule

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) (2016)).  The notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  When evaluating a treating source medical opinion as to the nature or severity of an individual's impairments, an ALJ should "[g]enerally . . . give more weight to opinions from [claimant's] treating sources."  20 C.F.R. § 404.1527(d)(2).  "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Hamlin*, 365 F.3d at 1215 (citing *Doyal*, 331 F.3d at 762.).

In reviewing the opinions of a treating physician, an ALJ must proceed sequentially. *Watkins*, 350 F.3d at 1300.  First, an ALJ must consider whether the medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2).  If the ALJ finds that the medical opinion is well-supported by such techniques, he or she must then confirm it is consistent with other substantial evidence in the record.  *Id.*  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Pisciotta*, 500 F.3d at 1077.  This inquiry is governed by its own set of factors, which include:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted).  While an ALJ must consider these factors, she need not expressly discuss each of them in her opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").  Rather, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01).  Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258.  If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

### b.  Stephen Rawe, M.D., PhD

The record reflects that Dr. Stephen Rawe served as Plaintiff's neurosurgeon in Charleston, South Carolina.  Plaintiff first sought treatment from Dr. Rawe on May 18, 2011,

with a chief complaint of back and neck pain.  Plaintiff indicated he had been experiencing such pain for the past ten to fifteen years.  Dr. Rawe's consultation notes indicate that Plaintiff was experiencing cervical spondylosis with bilateral exit, foraminal stenosis, and anterior cord compression, along with multilevel lumbar spondylosis.  Dr. Rawe noted that Plaintiff did not have a surgical option for his lumbar spine but he did have a strong option for cervical spine surgery.  AR 551-52.  On May 25, 2011, Plaintiff underwent surgery, with Dr. Rawe performing a partial corpectomy.  AR 554-56.  Plaintiff was discharged the following day, and follow-up notes six weeks after the operation indicate that although he was still experiencing pain, his neck pain had improved.  AR 557-58.  Plaintiff last visited Dr. Rawe's office in August 2011, and the office notes indicate that he was still experiencing lower back pain which extended to his left leg. AR 560.

In a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" dated November 5, 2012, Dr. Rawe assessed Plaintiff in seven categories related to workplace skills and activities.[8]  Broadly, he opined that Plaintiff would need to rest intermittently throughout the day due to pain and fatigue.  More specifically, he also concluded: Plaintiff would need to stand and walk at least two hours in an eight-hour work day; must periodically alternate sitting and standing to relieve pain and discomfort; his ability to push and pull is limited in his upper extremities; he is unable to do gross or fine manipulation with his left hand; he is limited in reaching in all directions; and, he can occasionally kneel, stoop, and crouch, but can never crawl. He based these opinions on Plaintiff's cervical neuropathy and lumbar stenosis.  AR 1218.

The ALJ assigned "some weight" to Dr. Rawe's opinion, finding it "somewhat consistent with the overall record."  AR 595.  She reasoned as follows:

---

[8] Dr. Rawe opined on Plaintiff's abilities as they related to the following categories: physical effort, lifting, standing and walking, sitting, pushing and pulling, manipulative, and postural.  AR 1218.

> Despite Dr. Rawe's treatment relationship with the [Plaintiff], having performed his neck surgery, the probative value of this opinion is diminished by the fact that Dr. Rawe had not examined the [Plaintiff] since 2011, and it is unclear how his opinion as to these physical limitations was reached, or to what period of time it applies.

AR 595.

Plaintiff attacks the ALJ's reasoning with respect to Dr. Rawe, arguing that "she did not analyze his opinion in light of the six factors contemplated by the regulations, but instead apparently rejected the assessment as not chronologically pertinent." Pl.'s Mot. 15-16. This approach, in Plaintiff's view, contradicts the district court's previous ruling in this case when it declared that "the evidence was probative of [Plaintiff's] functional ability during the relevant period." AR 16. The Commissioner responds to Plaintiff's arguments by stating that the ALJ's three reasons for discounting Dr. Rawe's opinion were sufficient under binding Tenth Circuit law. Def.'s Resp. 8.

The Court finds that the reasons the ALJ cited – comprised in a single sentence – are not legally sufficient to support her treatment of Dr. Rawe's opinion. The ALJ's reasoning appears to have incorporated at least one *Watkins* factor, that being the length of Dr. Rawe's treatment relationship with Plaintiff. Even so, the ALJ's single sentence of abbreviated reasoning does not withstand further scrutiny. The ALJ primarily relied on the fact that Dr. Rawe had not examined Plaintiff since August 2011, and in her opinion, this diminished the probative value of his opinion. She further stated that it was unclear what period of time his opinion applied to. Neither of these points have merit. If the ALJ had closely reviewed the entire record, she would have seen what the Court saw, which is that Plaintiff was homeless in South Carolina and moved to New Mexico in the fall of 2011 because a friend offered him shelter. Therefore, Plaintiff's relocation from South Carolina to New Mexico clearly precluded further visits with Dr. Rawe,

who is located in South Carolina. This leads to the inescapable conclusion that Dr. Rawe's opinion was based on his documented treatment of Plaintiff during the period of May 2011 through August 2011. Because Dr. Rawe and his team treated Plaintiff only for this fixed, limited, and clearly identified period, the period of time to which the doctor's opinions pertained should have been manifestly clear to the ALJ. Furthermore, because the instant case focuses only on the period of May 2010 through November 2014, the Court finds Dr. Rawe's opinion to be helpful in determining whether Plaintiff was disabled during this period.

Moreover, the ALJ's terse finding that Dr. Rawe's opinion was "somewhat consistent" with the overall record – without more – does not provide this Court, or any other reviewing court, with sufficient guidance as to what such a statement means. The ALJ failed to explain what portion of the doctor's opinion was "somewhat consistent" with the other substantial evidence in the record, much less what that substantial evidence was. This approach leaves the Court with more questions than answers. For example, Dr. Rawe opined that Plaintiff would need to intermittently rest throughout the day due to pain and fatigue. *See* AR 1218. Given that virtually each one of Dr. Rawe's treatment notes concerns Plaintiff's severe back and neck pain, the ALJ should have incorporated this limitation into the RFC or explicitly explained why she was omitting it. This is particularly so given that this portion of Dr. Rawe's opinion is identical to Dr. Evanko's opinion on two separate dates, in 2012 and 2015. *See* AR 1147-48, 1180-81.

Other limitations identified by Dr. Rawe were that Plaintiff would need to stand and walk two hours out of an eight-hour work day and that he would need to alternate between sitting and standing due to pain. Again, the ALJ made no mention of these restrictions and omitted them from Plaintiff's RFC. Dr. Evanko reached similar conclusions. Nonetheless, instead of explaining why opinions by two of Plaintiff's treating physicians, in two different states, who

arrived at identical conclusions years apart were not credited, the ALJ opted for silence. To emphasize: merely summarizing medical records and then providing the Court with generalized boilerplate language disguised as an explanation does not comply with the law. For this Court to conduct the review required of it, an ALJ needs to do more. For these reasons, the Court finds that the ALJ's consideration of Dr. Rawe's opinions did not comply with the proper legal standards.

### c.  Mark Evanko, DO

Dr. Mark Evanko practices family medicine and served as Plaintiff's primary care physician upon his transition to Los Lunas, New Mexico, in 2011. Medical records demonstrate that Plaintiff established care with Dr. Evanko on November 10, 2011 [AR 918], and they maintained a consistent treatment relationship through July 15, 2014. *See* AR 906-18, 1082-84, 1150-75. Dr. Evanko saw Plaintiff for a total of twenty-one visits in thirty-three months for issues ranging from pain in his hip, neck, and shoulders as well as seizures.

Dr. Evanko submitted a total of four checkbox-style opinions related to Plaintiff's abilities to do work-related activities – two in August 2012 and two in June 2015. *See* AR 1180-81, 1147-48. In a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" dated August 23, 2012, Dr. Evanko assessed Plaintiff in seven categories related to workplace skills and activities.[9] Dr. Evanko opined that due to pain and fatigue, Plaintiff would be unable to maintain physical effort for long periods without a need to decrease activity or pace, or he would need to rest intermittently throughout the day. He also offered specific opinions on the following: Plaintiff could both occasionally and frequently lift and carry less than five pounds; he could stand and walk for less than two hours in an eight-hour work day; he could sit for less

---

[9] Dr. Evanko opined on Plaintiff's abilities as they related to the following categories: physical effort, lifting, standing and walking, sitting, pushing and pulling, manipulative, and postural. AR 1218.

than four hours in an eight-hour work day; his ability to push and pull was limited in both his upper and lower extremities; he was able to do gross and fine manipulation with both hands; he was limited in reaching in all directions; he could occasionally kneel, stoop, crouch, and crawl; and, non-physical work activities were affected by pain, fatigue, sleep disturbances, neurocognitive problems, and mental problems. He based these opinions on Plaintiff's cervical disc disease and shoulder pain. As evidence, he cited to Plaintiff's magnetic resonance imaging ("MRI") scans. AR 1181.

In a "Medical Assessment of Ability to do Work-Related Activities (Non-Physical)" dated August 23, 2012, Dr. Evanko assessed Plaintiff in two categories related to workplace skills and activities. He opined that Plaintiff suffered from a pain producing impairment, injury, or sickness, which caused sleep disturbances and fatigue, such that it would cause Plaintiff to need to rest or lie down at regular intervals. *See* AR 1180. Additionally, of the eight sub-categories related to Plaintiff's limitations, he opined that Plaintiff experienced "moderate severity" in six, and "marked severity" in two.[10]

Approximately three years later, on June 19, 2015, Dr. Evanko completed the same checkbox-style assessments of Plaintiff's physical and non-physical abilities to do work-related

---

[10] Per the form, "moderate severity" means "a limitation that seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule." Dr. Evanko assessed that Plaintiff experienced moderate severity in the following sub-categories: (i) maintain attention and concentration for extended periods (i.e. 2-hour segments), (ii) perform activities within a schedule, (iii) maintain regular attendance and be punctual within customary tolerance, (iv) sustain an ordinary routine without special supervision, (v) work in coordination with/or proximity to others without being distracted by them, and (vi) make simple work-related decisions.

"Marked severity" means "a severe limitation which precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule." Dr. Evanko assessed that Plaintiff experienced marked severity in the following sub-categories: (i) maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently, and (ii) complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

AR 1180.

activities.  The June 2015 physical assessment was identical to the August 2012 assessment, with one change: Dr. Evanko opined that Plaintiff could occasionally lift less than twenty pounds, as opposed to less than five pounds.  AR 1147.  The June 2015 non-physical assessment was again almost identical, with the exception that Dr. Evanko opined that Plaintiff experienced "marked severity" in three categories, as opposed to two from August 2012.  He changed the category of "sustain an ordinary routine without special supervision" from moderate severity to marked severity.  Dr. Evanko offered the following comments: "Disc disease in both cervical and lumbar regions with compression nerve roots and spinal cord."  AR 1148.

The ALJ assigned "some weight" to both of Dr. Evanko's opinions, finding the 2012 opinion to be "somewhat consistent with the overall record, including Dr. Evanko's examinations, in which he sometimes noted objective findings supporting the [Plaintiff's] subjective complaints.  However, the opinion as to limitations in sitting and standing is not supported by the overall record."  In discussing the 2015 opinion, she reasoned "[t]his opinion is nearly identical to Dr. Evanko's more recent opinion and is therefore likewise assigned some weight."  AR 594.

Plaintiff argues that, based on the ALJ's language regarding Dr. Evanko, she "presumably found that the opinion was entitled to controlling weight."  Pl.'s Mot. 17.  The Commissioner responds that Plaintiff is mischaracterizing what the ALJ wrote, and that the ALJ clarified that she found his opinions to be "somewhat consistent" with the overall record.  Def.'s Resp. 11.  Defendant further emphasizes what the ALJ intended by stating that "[i]n other words, Dr. Evanko's opinion that Plaintiff had limitations due to degenerative disc disease and mental impairments was consistent with the record.  However, the extent to which Dr. Evanko opined Plaintiff was limited was not consistent with other evidence."  *Id.*

The Court finds that the ALJ's reasoning with respect to Dr. Evanko is legally insufficient.  The ALJ made the same critical mistake with Dr. Evanko as she did with Dr. Rawe, that being missing step one of the treating physician rule.  *See Watkins*, 350 F.3d at 1300 ("An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.).  The ALJ made no such determination in regards to Dr. Evanko.  Her decision to assign Dr. Evanko's opinions "some weight" clearly indicates that she did not find them to be deserving of controlling weight.  However, as previously discussed, this approach does not satisfy the law since the treating physician rule consists of two distinct steps.

In discounting Dr. Evanko's opinions, the ALJ again provided boilerplate language with one additional sentence concerning Plaintiff's limitations in sitting and standing.  Without further explanation, the Court cannot find that such a statement is supported by substantial evidence.  As previously discussed, Dr. Rawe opined that Plaintiff would need accommodations regarding sitting and standing.  For his part, Dr. Evanko offered similar opinions, but the ALJ failed to sufficiently explain why opinions by two of Plaintiff's treating physicians who treated him at different points in time for severe pain are only worthy of partial credit.  Justifying this finding with a blanket-style explanation such as "this portion of the opinion is not supported by the overall record" is unhelpful because the Court does not know what other evidence in the record the ALJ is citing to in reaching this determination.

### d.  Stephen Cheshire, PhD

Dr. Stephen Cheshire is a medical psychologist and served as Plaintiff's treating psychologist beginning in 2015.  The records reflect that Dr. Cheshire was treating Plaintiff for anxiety, depression, PTSD, and medication management.  Dr. Cheshire saw Plaintiff on seven occasions over the course of five months in 2015.  *See* AR 1187-98.

In a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" dated May 15, 2015, Dr. Cheshire assessed Plaintiff in four categories, comprising twenty sub-categories, related to workplace skills and activities.  Of these twenty sub-categories, Dr. Cheshire assessed that Plaintiff experienced "slight severity" in five, "moderate severity" in five, and "marked severity" in ten.[11]  Additionally, he opined that "[Plaintiff] is [ ] essentially unable to maintain adequate/normal relationships without significant [sic] escalate <u>very</u> minor conflicts."  AR 1143 (emphasis original).

The ALJ assigned "limited weight" to Dr. Cheshire opinion, finding as follows:

> Although Dr. Cheshire is a treating psychologist, there are very few treatment reports in the record, covering only 3 or 4 months.  In these few reports, Dr. Cheshire usually noted ongoing complaints, but also some improvement, and did not note objective findings to support the [Plaintiff's] subjective complaints.  As such, Dr. Cheshire's reports do not support the extreme limitations in mental function reflected in Dr. Cheshire's opinion statements.  I accord some weight to these opinion statements in that each statement indicates limitation in the [Plaintiff's] mental functioning, which is consistent with the overall record. However, because the overall record, including Dr. Cheshire's own reports, does

---

[11] Per the form, "slight severity" means there is no significant limitation in this area.  Dr. Cheshire assessed that Plaintiff experienced slight severity in the following sub-categories: (i) remember locations and work-like procedure, (ii) carry out very short and simple instructions, (iii) make simple work-related decisions, (iv) ask simple questions or request assistance, and (v) travel in unfamiliar places or use public transportation.

"Moderate severity" means "a limitation that seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule." Dr. Cheshire assessed that Plaintiff experienced moderate severity in the following sub-categories: (i) understand and remember very short and simple instructions, (ii) carry out detailed instructions, (iii) maintain attention and concentration for extended periods of time (i.e. 2-hour segments), (iv) be aware of normal hazards and take adequate precautions, and (v) set realistic goals or make plans independently of others.

"Marked severity" means "a severe limitation which precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule. Dr. Cheshire assessed that Plaintiff experienced marked severity in the following sub-categories: (i) understand and remember detailed instructions, (ii) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, (iii) sustain an ordinary routine without special supervision, (iv) work in coordination with/or proximity to others without being distracted by them, (v) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, (vi) interact appropriately with the general public, (vii) accept instructions and respond appropriately to criticism from supervisors, (viii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (ix) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and (x) respond appropriately to changes in the work place.

AR 1142-43.

not support the specific opinions as to the degree of limitation, his opinions are accorded limited weight overall.

AR 597-98.

Plaintiff argues that the ALJ's reasoning is unclear with regards to Dr. Cheshire, and that the ALJ "committed clear error by failing to provide, at either step of the analysis, specific and legitimate reasons to justify completely rejecting the favorable opinion evidence by [Plaintiff's] treating psychologist." Pl.'s Mot. 18. Defendant proffers nothing substantive in response, and relies instead on a recitation of the ALJ's reasoning. *See* Def.'s Resp. 12.

As to Dr. Cheshire, the Court concludes that the ALJ's treating physician analysis is both free of legal error and supported by substantial evidence. Procedurally, the record refutes Plaintiff's claim that the ALJ failed to provide specific and legitimate reasons for assigning the opinion diminished weight. *See* Pl.'s Mot. 18. Like the two preceding treating physicians, the ALJ was required to undertake a two-step inquiry to determine if Dr. Cheshire's opinion should be assigned controlling weight. This, the ALJ did. At the first step, she determined that Dr. Cheshire's opinion was inconsistent with other medical evidence in the record. *See Krauser*, 638 F.3d 1324, 1330 (10th Cir. 2011) (providing that in the "initial determination" of the treating physician analysis, "an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record . . . [but], [i]f the opinion is deficient in either of these respects, it is not to be given controlling weight") (internal citations omitted). Specifically, she found that "the overall record" did not "support [Dr. Cheshire's] specific opinions" concerning Plaintiff's degree of limitation. AR 598.

Having found Dr. Cheshire's opinion to be inconsistent with the overall record, the ALJ assumed two concomitant obligations. *See Krauser,* 638 F.3d at 1330. First, she became bound

to *refuse* Dr. Cheshire's opinion controlling weight, and second, she assumed the responsibility of deciding what lesser weight, if any, to assign Dr. Cheshire's opinion based on the six *Watkins* factors. *See Watkins*, 350 F.3d at 1301; 20 C.F.R. § 404.1527 (codifying these factors). Although the ALJ was required to consider the six *Watkins* factors, *see supra* p. 12, she was not bound to discuss each in her opinion. *See Oldham*, 509 F.3d at 1258; SSR 06-3P, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Indeed, rather than a formulaic recitation of the regulatory factors, what *Watkins* demands is "that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509.F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300). Put another way, the ALJ must "provide[ ] good reasons" in her decision for the weight she gives treating source opinions. *Id.*

Here, the ALJ assigned limited weight to Dr. Cheshire's opinion based on the length of Plaintiff's treatment record and the frequency of her examination (the first *Watkins* factor), the opinion's unsupportability (the third *Watkins* factor), and its internal inconsistency (the fourth *Watkins* factor). *See Watkins* 350 F.3d at 1301. The ALJ supported these findings with a detailed account of Plaintiff's treatment by Dr. Cheshire, which included citations to contrary, well-supported evidence. *See* AR 596 (noting occasional improvements in sleep, a manageable anxiety level, and relatively euthymic presentation). These references, coupled with the ALJ's extensive review of Plaintiff's treatment by Dr. Cheshire, satisfy the analysis demanded by *Watkins* and *Oldham*. Moreover, the ALJ's references to the record make patent that she *considered* all the relevant *Watkins* factors, even if she only *discussed* the three mentioned above. *See Watkins*, 350 F.3d at 1301. Based on the above, this Court finds the ALJ's reasoning

for according Dr. Cheshire's opinion little weight "sufficiently specific" to make clear to this Court and subsequent reviewers the weight she assigned and the reasons for that weight. *Oldham*, 509 F.3d at 1258. Consequently, the Court cannot find error in the ALJ's decision to discount the treating physician's opinion.

Whether the Court would have evaluated Dr. Cheshire's opinion differently if it were the original fact finder or were reviewing the evidence *de novo* is not the question. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The Court's role is confined to determining whether the ALJ erred as a matter of law in her treatment of Dr. Cheshire's opinion. The Court finds no such error.

## VI. CONCLUSION

The ALJ did not follow the correct legal standards in considering opinions from Dr. Rawe or Dr. Evanko. Absent further clarification from the ALJ, the Court is unable to conclude that her reasoning with respect to these two treating physicians is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*